### ROBINSON v. HOLBROOK et al.

(Circuit Court, D. Rhode Island. May 23, 1906.)

No. 2,693.

1. CORPORATIONS—CHARTER POWERS—CREATION OF NEW CORPORATION.

Where the G. Company, a corporation, was organized with power to manufacture goods made of gold and silver or other metallic substances, for the transaction of other business connected therewith, and with power to invest in the shares of other corporations, such power to invest did not prima facie confer on the G. Company, power to change another corporation having a present capital of $100,000, the majority of which was held by the G. Company, into a holding corporation with a capital of $10,-000,000 for the purpose of acquiring stocks in other companies to the extent of nearly $7,000,000 which was nearly $5,000,000 in excess of the authorized capital of the G. Company.

2. SAME—INJUNCTION.

A minority stockholder was entitled to a preliminary injunction to restrain the carrying out of such scheme pendente lite.

On Petition for Preliminary Injunction. Granted.

Guggenheimer, Untermyer & Marshall (Samuel Untermyer and Walter B. Vincent, of counsel), for complainant.

Richard B. Comstock, and Comstock & Canning, for defendants.

BROWN, District Judge. In disposing of this petition for a preliminary injunction, we may pass all questions as to the regularity of the call for the special meeting of the shareholders of the Gorham Manufacturing Company, and as to the breadth of the powers conferred upon the directors, and proceed at once to the substantial questions presented by the resolution of the board of directors of the Gorham Manufacturing Company, passed May 1, 1906. This resolution instructed Mr. Holbrook, the treasurer of the Gorham Company, to vote upon the shares of stock of the Silversmiths' Company held by the Gorham Company, in favor of an increase of the capital stock of the Silversmiths' Company from $100,000 to $10,000,000, divided in-

to 100,000 shares at $100 each; for an issue of 70,000 shares at par, as follows: $1,750,000, or 17,500 shares, at par for cash to holders of preferred and common stock of the Gorham Company in proportion to their holdings, any portion of said 17,500 shares not taken by the Gorham Company shareholders to be sold to the public; $5,250,000, or 52,500 shares, or so much thereof as may be taken in exchange at par, to holders of the common stock of the Gorham Company, in exchange for their holdings in the Gorham Company at a valuation of $210 per share for the common stock of the Gorham Company. The treasurer was further instructed to sell to the Silversmiths' Company, the Gorham Company's holdings of shares of stock of the Whiting Manufacturing Company, of the William B. Durgin Company, of the Silversmiths' Company of New Jersey, of the Siversmiths' Company of New York, and all the assets late of W. B. Kerr & Company, Inc., at a price not less than the cost thereof to the Gorham Company to the date of sale.

The complainant, a nonassenting shareholder of the Gorham Company, seeks to enjoin the carrying out of this plan, contending that it is beyond the corporate powers of the Gorham Company, is offensive to the principle that a person occupying a fiduciary relation, who is authorized to sell property for another, cannot himself become the purchaser, directly or indirectly, and is against the rights and financial interest of the complainant. It is also alleged that this plan is not in pursuance of any need or purpose of the Gorham Company, but is solely for the purposes of the majority of shareholders, and especially of Mr. Holbrook; and contemplates and will result in a control of the Gorham Company's affairs by the Silversmiths' Company, as a holding company.

After a careful consideration of the complainant's bill, of the affidavits, and of the authorities cited, I am of the opinion that the controversy is of a substantial character, involving important questions of law as to the corporate powers of the Gorham Manufacturing Company, and as to the legal right of a majority of the shareholders of the Gorham Company to effect or to aid in this manner the transfer of important assets of the Gorham Company to the Silversmiths' Company, or to provide for the ownership by the Silversmiths' Company of shares of Gorham Company stock. There is reason for thinking that the plan disclosed by the resolutions of the directors may comprehend purposes which hardly can be regarded as corporate purposes of the Gorham Company, or as properly incident thereto.

Assuming that it may be for the interest of the Gorham Company to dispose of its shareholdings in other corporations, though this is disputed by the complainant, there are serious doubts of the right to do this at a price fixed arbitrarily by persons who are to become shareholders in the Silversmiths' Company, which is to acquire these shares of stock; and it is questionable, at least, whether it is a corporate purpose of the Gorham Company to promote, to provide for, or to lend the sanction of its corporate vote to the acquisition by the Silversmiths' Company of a considerable proportion of the shares of stock in the Gorham Company, so that the Silversmiths' Company is

to have a considerable voice in, if not control of, the management of the Gorham Company.

It is apparently the purpose of the majority of shareholders of the Gorham Company that the Silversmiths' Company shall be a holding company which shall hold not only the shares of stock in other companies now owned by the Gorham Company, but also shares of stock to the amount of 25,000 shares in the Gorham Company itself. A holding of this amount of shares by the Silversmiths' Company would give it an equal voice with all other shareholders of the Gorham Company in the management of the affairs of the Gorham Company; and but a single additional share, acquired either by the Silversmiths' Company or by a person interested in the Silversmiths' Company, would be sufficient to constitute a complete control of the Gorham Company.

Ordinarily, corporate combinations effected through a holding corporation are organized by dealings which are entirely between the holding corporation and the shareholders of the several companies whose shares are to be held. Noyes on Intercorporate Relations, § 310, par. 1.

In the present case, substantially all the shares of stock of the Silversmiths' Company, whose present capital is $100,000, are owned by the Gorham Company, which is to be the author of a conversion of the $100,000 corporation into a $10,000,000 corporation which is to acquire stocks in other companies to the extent of nearly $7,000,000. The Gorham Company's authorized capital stock is $5,000,000. It is permitted to purchase, own, hold, and dispose of shares of the capital stock of other corporations to the extent of 35 per cent. of its capital stock. It is intended to base upon corporate action of the Gorham Company, the practical creation of a distinct corporation holding nearly $7,000,000 of said stock, or about $5,000,000 in excess of what the Gorham Company is authorized by its own charter to hold. The fact that the Silversmiths' Company is already incorporated does not alter the fact that it is intended that the Gorham Company is to institute a substantially new corporation.

Assuming that the amendment to the charter of the Gorham Company, which authorizes it to hold stock in other corporations, gives to the Gorham Company the ordinary rights of a shareholder to vote upon the shares of stock which it holds, can it be said that the voting power which is incident to its right to hold shares of stock in other corporations enables it to take such corporate action as will convert a subsidiary company into a corporation of larger capital stock than itself? Was it the intention of the Rhode Island Legislature, in granting to the Gorham Company the right to be a stockholder, to confer upon it, as an incident to that right, the unlimited right to create, by increase of capital stock of its subordinate companies, an indefinite and unlimited amount of shares? If the right exists to enlarge the Silversmiths' Company from a $100,000 to a $10,000,000 corporation, it equally exists as to every other company whose shares of stock are now owned by the Gorham Company.

Looking to the substance of the complainant's rights as a large shareholder in the Gorham Company, there certainly is force in the complainant's objection that the Gorham Company, by its stockholders' vote and by the action of its board of directors in pursuance thereof, has embarked in the promotion of an enterprise foreign to that for which it was created, and which, if effected, will leave the complainant the choice of investing a considerable amount of additional capital in the Silversmiths' Company and of parting with his shares in the Gorham Company in exchange for shares in the Silversmiths' Company, a holding corporation, or, on the other hand, of remaining a shareholder in the Gorham Company with the risk that it shall be managed not solely for its own interests, but with regard to the interests of other corporations controlled by the Silversmiths' Company.

One of the advantages of the plan which was specifically urged at the stockholders' meeting was, "providing a central control which shall be exercised over the different properties." It will be for the interest of the shareholders of the Silversmiths' Company to so operate the various corporations as to yield the largest result from their aggregate operations. There is a substantial difference between the present status of the Gorham Company, as a prosperous and independent corporation, and its proposed status as a corporation controlled by a holding company, and managed with regard to the interests of other distinct corporations under the control of the same holding company.

The defendants' contention is that the right to purchase, own, hold, and dispose of shares in other corporations gives the Gorham Company the ordinary right of a shareholder to vote upon these shares, and also an unlimited right as a shareholder to initiate whatever corporate action of the Silversmiths' Company the Gorham Company as a shareholder may see fit. The conclusion to which this argument logically leads arouses a suspicion of its soundness. No limitation is placed upon the kinds of shares which the Gorham Company may hold. It may own shares in railroads and manufacturing companies, and corporate shares of every kind. If, by virtue of its share holdings, it may create holding companies for the silversmith business, the same argument would authorize it to create holding companies for other branches of industry.

The power to invest in shares of other corporations must, however, be regarded as incidental to the charter purposes of the Gorham Company; i. e., "manufacturing goods made of gold, silver, or other metallic substance, and for the transaction of other business connected therewith." The incidental power to invest granted by amendments to the charter is to be narrowly construed, being in derogation of the ordinary rule that one corporation cannot invest in shares of stock of another. It would involve great practical difficulties were we to hold that the power to invest in shares of other corporations can be construed as an unlimited power to initiate or to promote new enterprises different in character and scope, perhaps exceeding in magnitude, that for which original charter powers were granted. It seems

probable that the power of holding shares is a subordinate power, not to be so exercised as to enlarge the general scope of the business of the corporation by promoting other distinct corporate enterprises, whether in a different field or in the same field. It is very doubtful whether, by giving the Gorham Company power to invest in the shares of other corporations, the Legislature intended to confer the power to set up and practically create a new corporation in the same line of business which should control its creator.

In deciding upon this petition, I do not proceed upon the ground that a fraudulent intention is exhibited in any of the acts of the defendants. Apparently it was not regarded by a majority of the shareholders of the Gorham Company as undesirable that Mr. Holbrook should have a large or controlling voice in the Silversmiths' Company. But whether or not this plan is preferred by a majority of the shareholders is not the question. Giving due consideration to the fact that a majority of shareholders may regard this action as for their pecuniary advantage, and to the rule that all problems of business judgment are to be determined by a majority vote, yet it must be remembered that the majority are limited in their powers by the charter, and that this cannot be overridden however profitable it might be for the majority to carry out what they apparently, in good faith, regard as a sound business proposition.

In view of the importance of the questions which have been presented, I am of the opinion that the complainant presents a proper case for a preliminary injunction. Having regard to the interests of a majority of the shareholders, it seems to me highly undesirable that this plan should proceed; that the Silversmiths' Company should put forth the new issue of shares, and the exchange of Gorham Company shares be made and the assets of the Gorham Company transferred to the Silversmiths' Company, while this bill is pending. Should an injunction be refused at this time, and the complainant's bill subsequently be sustained, the injury to the complainant from a failure to grant temporary relief would be great, and perhaps irreparable; and the injury to the defendants which would result from undoing what had been done would doubtless be great. The best interests of all parties will be subserved by granting this preliminary injunction. Having in mind the statements of complainant's counsel as to his willingness to proceed speedily to a hearing on the merits, I think that if the defendants desire a shorter time than that allowed by the rules should be fixed for the taking of testimony, in order that the case may be finally determined on full hearing as speedily as possible.

The petition for a preliminary injunction is granted.